**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FEDERAL DEPOSIT INSURANCE**
**CORPORATION, AS RECEIVER FOR**
**BANKUNITED, F.S.B.**

      **Plaintiff,**

v.                                       **Case No:  6:12-cv-756-Orl-36KRS**

**KARDOS APPRAISAL & CONSULTING**
**CORP., CYNTHIA MARIE SANTACROCE,**
**DOES 1 THROUGH 40,**

      **Defendants.**

_____

**ORDER**

This cause comes before the Court upon the Motion for Partial Summary Judgment (Doc. 42) filed by Plaintiff Federal Deposit Insurance Corporation ("FDIC"), as receiver for BankUnited, F.S.B. ("BankUnited").  Defendants Kardos Appraisal & Consulting Corp. ("Kardos") and Cynthia Marie Santacroce ("Santacroce" and, collectively with Kardos, "Defendants") filed a response in opposition to the FDIC's Motion for Partial Summary Judgment ("Response") (Doc. 58), and the FDIC filed an Amended Reply in further support of its motion (Doc. 76).  Upon due consideration of the parties' submissions, including declarations and affidavits, stipulation of facts, and memoranda of counsel, and for the reasons that follow, the FDIC's Motion for Partial Summary Judgment will be denied.

I.   BACKGROUND

   A.   **Undisputed Facts**[1]

The FDIC is a corporation organized and existing pursuant to an act of Congress known as the Federal Deposit Insurance Act, 12 U.S.C. § 1811 *et seq*.  *See* SAF ¶ 1.  The FDIC is empowered to act as a receiver for failed banks and, in that role, oversee the orderly liquidation of such banks.  *See* 12 U.S.C. § 1821; SAF ¶ 2.  On May 21, 2009, BankUnited, an FDIC-insured savings bank, was closed by the U.S. Department of the Treasury's Office of Thrift Supervision, and the FDIC was appointed as receiver pursuant to 12 U.S.C. § 1821(c).  SAF ¶¶ 3, 6, 12.  Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC succeeded to all rights, titles, powers, and privileges of BankUnited, including the claims that are the subject of this action.  SAF ¶ 4.  Santacroce is an individual who, at all times material to this action, was a Florida Certified Residential Appraiser working as an "agent and/or employee" of Kardos, a Florida corporation engaged in the business of real estate appraisals.  *Id.* at ¶¶ 7–11.

On or about January 27, 2006, BankUnited funded a loan (the "Moisdon Loan") in the amount of $660,000 to borrower David Moisdon ("Moisdon") for the refinance of his mortgage secured by certain residential real property located at 7795 South U.S. Highway 1, Titusville, Florida (the "Property").  Doc. 47, Declaration of Sean Newbold ("Newbold Dec."), ¶ 8.  Silver Lining Lending, LLC ("Silver Lining Lending"), an intermediary mortgage broker between lenders and borrowers, served as the broker of the Moisdon Loan pursuant to a written agreement between Moisdon and Silver Lining Lending dated December 18, 2005.  *Id.*; *see id.* Ex. B.  On or about December 28, 2005, approximately one month before the Moisdon Loan closed, Silver

---

[1] This Statement of Facts is derived primarily from the parties' Joint Stipulation of Undisputed Facts ("JSF") (Doc. 62), the Statement of Admitted Facts ("SAF") in the Joint Pretrial Stipulation (Doc. 96), the affidavits of various individuals, and accompanying exhibits.  At this stage, the Court is obliged to construe the facts in the light most favorable to Defendants.  *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).

2

Lining Lending contacted Kardos and verbally ordered an appraisal of the Property. SAF ¶ 15. On or about that date, Santacroce, on behalf of Kardos, performed an appraisal of the Property (the "Appraisal") and prepared a written Uniform Residential Appraisal Report for the Property with an effective date of December 28, 2005. *Id.* at ¶ 16; JSF ¶ 4; *see* Newbold Dec. Ex. D ("Appraisal Report"). The Appraisal Report valued the Property at $825,000 as of December 28, 2005. SAF ¶ 17; *see* Appraisal Report at 3. The Appraisal Report contained certifications stating that the Appraisal had been performed in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice, that the appraiser had determined the market value of the Property based on a sales comparison to similar properties in the area, and that the appraiser had considered all factors which might influence the value of the Property. *See* Appraisal Report at 6–7. After completing the Appraisal Report, Defendants presented Silver Lining Lending with an invoice in the amount of $250.00 for their services. SAF ¶ 18; *see* Newbold Dec. Ex. E. The Appraisal Report was provided to BankUnited, which thereafter funded the Moisdon Loan in the amount of $660,000. Newbold Dec. ¶ 11.

Moisdon eventually defaulted on the Moisdon Loan, and BankUnited was forced to foreclose on the Property. SAF ¶ 19. The FDIC claims that BankUnited could not recoup its losses on the Moisdon Loan through foreclosure because the outstanding balance on the Moisdon Loan exceeded the market value of the Property—which, in the opinion of the FDIC's expert witness, real estate appraiser Michael Roy ("Roy"), was actually $650,000 as of December 28, 2005, rather than the $825,000 value attributed by Defendants in the Appraisal Report. *See* Doc.

42; Doc. 76 at 5 n.3.[2]  Thus, the FDIC contends that the Appraisal Report grossly overstated the value of the Property.

Roy based his conclusion as to the Property's value as of December 28, 2005 on a review of Defendants' Appraisal Report and an inspection of the Property and comparable data. *See* Roy Report at 1.  Roy opines that Defendants made several errors in preparing the Appraisal Report and, therefore, the Appraisal Report's value determination was unreliable. *Id.* at 7.  For example, the Appraisal Report failed to mention that the Property was located across from a power plant and alongside a spillway containing cooling water from the plant. *Id.* at 2.  Roy states that the plant was coal-powered at the time of the Appraisal, that the coal was transported alongside the Property via a slip and unloading facility adjacent to the spillway, and that the plant would disburse ash into the air. *Id*.  Roy also states that the spillway could affect water depth near the Property and that channel markers located in the area could impact the Property's water access or the ability to construct a dock. *Id.*  According to Roy, the Appraisal Report's failure to include a discussion of the plant and spillway, and the corresponding impact on the value of the Property, was a "significant omission," thereby violating the Uniform Standards of Professional Appraisal Practice. *Id.* at 7.

Roy also points out that the Appraisal Report did not mention the Space Coast Regional Airport, which was 1.6 miles from the Property, or the "large amount of industrial land" surrounding the airport. *Id.* at 2.  Moreover, Roy asserts that the Appraisal Report utilized comparable properties that had superior characteristics relative to the Property in terms of

---

[2] Roy's expert report asserts that the market value of the Property as of December 28, 2005 was $550,000. *See* Doc. 45, Declaration of Michael C. Roy, Ex. 1 ("Roy Report"). However, in its Amended Reply, the FDIC concedes that Roy subsequently discovered a calculation error in his report, and that the correct market value as of December 28, 2005 was $650,000 rather than $550,000. Doc. 76 at 5 n.3.

location, quality of construction, condition of the buildings, and functional features, and that no adjustment was made for these superior characteristics. *Id.* at 4–5. Roy maintains that Defendants' failure to adjust for these superior characteristics was "careless or negligent," thereby violating the Uniform Standards of Professional Appraisal Practice. *Id.* at 7. The FDIC also claims that the comparable properties used by Defendants in the Appraisal Report were, respectively, 25, 15, 16, 7, and 4 miles from the Property, and therefore too far from the Property to be reliable indicators of its value. *See* Doc. 42; Appraisal Report at 3, 9.

Defendants retained their own expert witness, real estate appraiser Thomas G. Richards ("Richards"), to support the valuation conclusion in the Appraisal Report. According to Richards, the Property is "quite unique" due to its frontage on the Indian River, scenic view, and large size. Doc. 58-3, Affidavit of Thomas G. Richards ("Richards Aff."), ¶ 5. As such, it was necessary for Defendants "to expand distance parameters to other comparable waterfront neighborhoods in the search for comparable sales to contrast the [Property]." *Id.* at ¶ 6. Thus, Richards believes that the comparable sales used in the Appraisal Report were reasonable indicators of the Property's value, "especially considering that most had some level of exposure to undesirable elements such as trailer parks, commercial buildings, congested traffic and low-income housing tower [sic]. Additionally, two of the comparable sales contained less desirable riparian river frontage while all were inferior in size to the subject." *Id.* at ¶ 7. Richards further opines that the appraised value of the Property provided in the Appraisal Report "is reasonable and reasonably supported for its intended purpose and, therefore, a reliable indicator of the value of the Property as of the date of valuation, December 28, 2005." *Id.* at ¶ 13.

Richards also criticizes the Roy Report, stating that "[m]any points made [therein] appear to be exaggerations, while many others are simply untrue and are considered to exhibit a lack of familiarity with the local Brevard County marketplace." *Id.* at ¶ 10. Richards explains:

> There are elements of the [Roy Report's] comments, adjustments and opinions that seem to clearly suggest a lack of local knowledge which is so critical to this type of valuation. This is evidenced by such factors as market condition adjustments in the wrong direction, excessive size adjustments applied to the comparables' building area differences, no recognition of adjustments for overall land size differences, limited knowledge regarding the adjacent cooling canal and the true nature and design of the nearby small scale general purpose airport located nearly 2 miles away and the logistics and functionality of the facility with permanently closed runways on the approach and departure patterns that would even conceivably effect [sic] the subject property negatively.

*Id.* at ¶ 11. Thus, Richards asserts that the Roy Report's "analysis and opinions are flawed with erroneous technical and illogical conclusions and analyses with the overall result being an intentional an attempt [sic] to severely understate the value of the [Property]." *Id.* at ¶ 12.

**B.    Procedural History**

On May 18, 2012, the FDIC, as receiver for BankUnited, filed a Complaint against Kardos and Santacroce, asserting claims for breach of a third party beneficiary contract (Count I), negligent misrepresentation (Count II), and professional negligence (Count III). *See* Doc. 1. The Complaint alleged that the Appraisal Report contained numerous inaccuracies and misrepresentations which artificially inflated the value of the Property, including: (1) failure to disclose that the Property was directly across from a power plant that was emitting heavy pollution; (2) failure to disclose the Property's close proximity to the Space Coast Regional Airport and the resulting noise; and (3) improperly determining the market value of the Property based on the value of other properties that were larger, in different locations, and had other superior characteristics. *Id.* at ¶¶ 14–19. The Complaint further alleged that BankUnited relied on the Appraisal Report's representation that the Property was worth $825,000 in funding the

Moisdon Loan, and as a result BankUnited suffered damages when it was forced to foreclose on the Property at a loss. *Id.* at ¶¶ 20–25. Subsequently, the FDIC filed an Amended Complaint, which contains the same claims and the same substantive allegations as the original Complaint. *See* Doc. 33.

On May 6, 2013, the FDIC filed the instant Motion for Partial Summary Judgment, seeking summary judgment in its favor on the issue of liability with respect to each of its claims. *See* Doc. 42.[3] The FDIC filed Roy's declarations and the Roy Report concurrently with its Motion for Summary Judgment. *See* Doc. 45. On May 20, 2013, Defendants filed their Response, along with the affidavits of Richards, Santacroce, and the vice president of Kardos, Rudolph M. Kardos ("Rudolph Kardos"). *See* Doc. 58; Richards Aff.; Doc. 58-2, Affidavit of Cynthia M. Santacroce ("Santacroce Aff."); Doc. 58-1, Affidavit of Rudolph M. Kardos ("Kardos Aff.").

Thereafter, the FDIC filed a motion to strike: (1) paragraphs 8 through 10 of the Kardos Affidavit and paragraphs 10 through 12 of the Santacroce Affidavit as improper lay opinion and otherwise inadmissible as expert opinion due to untimely expert disclosure; and (2) the entirety of the Richards Affidavit due to untimely expert disclosure. *See* Doc. 60. Defendants, meanwhile, filed a motion to strike Roy's declarations and the Roy Report due to untimely expert disclosure. *See* Doc. 65. On July 3, 2013, Magistrate Judge Karla R. Spaulding entered an Order denying Defendants' motion to strike Roy's declarations and the Roy Report, finding that the late disclosure was harmless. Doc. 75 at 3. The Magistrate Judge also denied the FDIC's motion to strike with respect to the Richards Affidavit, finding that any prejudice to the FDIC would be cured by allowing the FDIC to depose Richards at a later date and to file an

---

[3] The FDIC states that it wishes to reserve the issue of damages for trial. *See* Doc. 42 at 11.

Amended Reply based on Richards' testimony. *Id.* at 4.[4] Finally, the Magistrate Judge granted the FDIC's motion to strike to the extent it sought to prevent Santacroce and Rudolph Kardos from testifying as expert witnesses due to their late disclosure, but reserved for this Court the issue of whether the objected-to portions of the Santacroce and Kardos Affidavits were admissible as lay opinion testimony. *Id.* at 4–6. On December 17, 2013, the Court held a hearing on this remaining issue and entered an Oral Order denying the FDIC's motion to strike as to the Santacroce Affidavit, concluding that the objected-to portions were admissible as lay opinion testimony. *See* Docs. 116, 117; Unofficial Transcript at 52–55. However, the Court granted the FDIC's motion to strike as to the Kardos Affidavit, finding that the objected-to portions did not qualify as lay opinion testimony. *See* Docs. 116, 117; Unofficial Transcript at 53–55. As a result, paragraphs 8 through 10 of the Kardos Affidavit were stricken.[5] The FDIC's Motion for Partial Summary Judgment is now ripe for adjudication.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). That burden can be

---

[4] The FDIC subsequently deposed Richards and filed its Amended Reply on July 19, 2013. *See* Doc. 76.

[5] Although the Court declined to strike the objected-to portions of the Santacroce Affidavit, it has not been necessary for the Court to consider any portion of the Santacroce Affidavit (or, for that matter, the Kardos Affidavit) in ruling on the instant Motion for Partial Summary Judgment.

discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48. A fact is "material" if it may affect the outcome of the suit under governing law. *Id.* at 248. In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

### III. DISCUSSION

#### A. The Court Will Look to Florida Law

"Though it is settled beyond question that Federal law governs cases involving the rights of the FDIC, courts must look to federal common law where . . . federal statutory law does not provide a rule of decision. In applying federal common law, federal courts are free to apply the traditional common law technique of decision and to draw upon all the sources of common law[,]" including state law. *Am. Nat'l Bank of Jacksonville v. FDIC*, 710 F.2d 1528, 1534 n.7 (11th Cir. 1983) (citing *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942)) (internal citations and quotations omitted). Here, the Court will look to Florida law in examining each of the FDIC's claims since the purported oral agreement between Silver Lining Lending and Defendants to conduct the Appraisal was made in Florida, the Appraisal Report was executed in Florida, and the parties' reliance on Florida law in arguing the Motion for Partial Summary Judgment demonstrates their intent to regulate and interpret the agreement and the Appraisal

9

Report under the laws of Florida. *See id.* ("In the present case, we look to the law of Florida since the parties executed the . . . agreement in that State, and their reliance on Florida law in presenting this appeal demonstrates their intent to regulate and interpret the agreement under the laws of that State.").

### B. Breach of a Third Party Beneficiary Contract

In Florida, a plaintiff asserting a claim for breach of a third party beneficiary contract must show the following elements:

(1) a contract between A and B;

(2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit C, the third party (or a class of persons to which that party belongs);

(3) breach of that contract by either A or B (or both); and

(4) damages to C resulting from the breach.

*Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1329 (S.D. Fla. 2010) (citing *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1031 (Fla. 4th Dist. Ct. App. 1994)). Here, the FDIC maintains that: (1) Silver Lining Lending and Defendants entered into an oral agreement whereby Defendants would conduct the Appraisal and prepare the Appraisal Report; (2) BankUnited was the intended beneficiary of this oral agreement; (3) Defendants breached the agreement by failing to conform with the Uniform Standards of Professional Appraisal Practice and the certifications in the Appraisal Report; and (4) BankUnited was damaged by the breach because it caused the Moisdon Loan to be undersecured. *See* Doc. 24 at 11–14. In their Response, Defendants assert that summary judgment must be denied because they have raised a genuine issue of material fact as to the third element, i.e., whether they breached the oral agreement by improperly preparing the Appraisal Report. *See* Doc. 58 at 5–10. Defendants are correct.

As Defendants point out, Florida's First District Court of Appeal decided a case with strikingly similar facts—albeit with the procedural posture essentially reversed—in *Security First Federal Savings & Loan Ass'n v. Broom, Cantrell, Moody & Johnson*, 560 So. 2d 304 (Fla. 1st Dist. Ct. App. 1990), *disapproved of on other grounds by Garden v. Frier*, 602 So. 2d 1273 (Fla. 1992). In that case, a borrower applied for a loan from Security First, a federally-chartered savings and loan association, to purchase and develop certain real property. *Id.* at 305. Because Security First required an appraisal of the property before funding the loan, the borrower obtained an appraisal report prepared by a real estate appraisal firm, which stated that the fair market value of the property was $1,175,000. *Id*. In reliance on the appraisal report, Security First made loans to the borrower secured in part by a mortgage on the property. *Id*. The borrower subsequently defaulted on the loans and Security First was forced to foreclose on the property. *Id*. However, a new appraisal by a different appraisal firm valued the property at much less than the amount estimated by the original appraisal firm, meaning that Security First would be sustaining a loss on the loans. *Id*. Security First then sued the original appraisal firm, alleging, as here, breach of a third party beneficiary contract, negligence, and negligent misrepresentation. *Id*.

After the appraisal firm—rather than the financial institution, as in the case *sub judice*—moved for summary judgment, the trial court granted the appraisal firm summary judgment on all claims, finding that Security First had not created a genuine issue of material fact as to whether the appraisal firm had adequately performed the appraisal. *Id.* at 306. On appeal, Florida's First District Court of Appeal reversed the grant of summary judgment, finding that Security First had created a genuine issue of material fact on this issue. *Id*. The appellate court, noting that all evidence and reasonable inferences therefrom had to be construed in favor of the

non-moving party, pointed to an affidavit submitted by Security First's expert witness, a property appraiser. *Id*. In the affidavit, the expert opined that the appraisal firm had failed to comply with professional appraisal standards, that the firm had utilized comparable properties which were not sufficiently similar to the property at issue, and that the firm had failed to include all necessary information in the appraisal report. *Id*. As a result, the expert concluded that the firm had grossly overstated the value of the property. *Id*. The appellate court determined that the averments in the expert's affidavit were sufficient to create a genuine issue of material fact as to liability, and that the trial court had erred by deciding this disputed issue of fact. *Id.* at 306–07.

While *Security First* was decided under Florida's summary judgment standard rather than the federal standard, the standards are sufficiently similar such that the case proves instructive, and the Court can comfortably conclude that Defendants have raised a genuine issue of material fact here. Defendants' expert witness, Richards, a licensed and experienced property appraiser, submitted an affidavit opining that it was reasonable for Defendants to use the comparables they did, as the Property was so unique that it was necessary to expand the distance parameters to other comparable waterfront neighborhoods. Richards Aff. ¶ 6. Richards also avers that the comparables were, like the Property, exposed to certain undesirable elements, thus making them reasonable comparables to the Property. *Id.* at ¶ 7. Based on these opinions, Richards concludes that the value estimate provided by Defendants in the Appraisal Report was reasonable as of the effective date. *Id.* at ¶ 13. Thus, the FDIC is incorrect in arguing that Richards merely quarrels with the Roy Report, although he does in fact challenge certain of Roy's conclusions. *See id.* at ¶¶ 9–12. Taken together, and viewed in the light most favorable to Defendants, Richards' averments are sufficient to create a genuine issue of material fact as to whether Defendants' breached their oral agreement with Silver Lining in their preparation of the Appraisal Report.

The FDIC, citing *Powers v. Lazy Days' R.V. Ctr., Inc.*, No. 8:05-cv-1542, 2007 WL 1064215 (M.D. Fla. Apr. 4, 2007), asserts that the Richards Affidavit is fatally deficient because Richards merely states that Defendants' valuation of the Property was reasonable, rather than providing a precise valuation himself. *See* Doc. 76 at 5–7. However, *Powers* does not stand for the proposition claimed by the FDIC. Rather, in *Powers*, the court held that an expert witness' opinion as to the value of a defective recreational vehicle (RV) was inadmissible under Federal Rule of Evidence 702 because the expert had not set forth sufficient facts and data to support any conclusion of damages. 2007 WL 1064215, at *3. Specifically, the expert merely listed several allegedly defective items and stated that those items diminished the value and safety of the RV, without explaining how he had arrived at those conclusions or what the resulting damages were. *Id.* Thus, *Powers* does not stand for the proposition that an expert witness must testify as to an exact dollar amount in order to create a genuine issue of material fact on a motion for summary judgment. Here, Richards' statement that the $825,000 valuation provided by Defendants in the Appraisal Report was "reasonable" is sufficient; there is no need for Richards to include an exact dollar amount.

The FDIC also asks the Court to find that the Appraisal Report's omission of the nearby power plant and airport essentially amounts to a breach of contract *as a matter of law*. *See* Doc. 76 at 7–10. The Court will not go this far. As explained previously, Richards has opined that the comparables utilized in the Appraisal Report also had certain undesirable elements, thereby making them proper comparables for the Property. It is not for the Court to decide this disputed issue of material fact at the summary judgment stage. Because Defendants have raised a genuine issue of material fact as to whether they breached their oral agreement with Silver Lining

13

Lending, summary judgment must be denied on the FDIC's claim for breach of a third party beneficiary contract.

### C.   Negligent Misrepresentation

Under Florida law, a claim for negligent misrepresentation requires proof that:

(1) [T]here was a misrepresentation of material fact;

(2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false;

(3) the representer intended to induce another to act on the misrepresentation; and

(4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.

*Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1307 (M.D. Fla. 2010) (citing *Coral Gables Distrib., Inc. v. Milich,* 992 So. 2d 302, 303 (Fla. 3d Dist. Ct. App. 2008)).  Here, the FDIC asserts that:  (1) the Appraisal Report contained material misrepresentations; (2) as certified real estate appraisers who visited the Property and were experienced in making appraisals, Defendants should have known the falsity of their representations; (3) Defendants intended to induce BankUnited to rely on the Appraisal Report in funding the Moisdon Loan; and (4) BankUnited suffered damages because it was undersecured on the Moisdon Loan due to reliance on the valuation figure provided in the Appraisal Report.  *See* Doc. 42 at 17–19.  In their Response, Defendants assert that summary judgment must be denied because they have raised a genuine issue of material fact as to whether the Appraisal Report misrepresented the value of the Property.  *See* Doc. 58 at 5–10.  Once again, Defendants are correct.  For the same reasons explained in Part III.B., *supra*, the Richards Affidavit is sufficient to create a genuine issue of material fact as to whether Defendants made a misrepresentation of material fact in the Appraisal

14

Report. Accordingly, summary judgment must be denied on the FDIC's negligent misrepresentation claim.

### D. Professional Negligence

Under Florida law, a claim based on negligence comprises four elements:

(1) A duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

(2) A failure on the [defendant's] part to conform to the standard required: a breach of the duty.

(3) A reasonably close causal connection between the conduct and the resulting injury. This is what is commonly known as "legal cause," or "proximate cause," and which includes the notion of cause in fact.

(4) Actual loss or damage.

*Trinidad & Tobago Unit Trust Corp. v. CB Richard Ellis, Inc.*, 280 F.R.D. 676, 678 (S.D. Fla. 2012) (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)). A claim for professional negligence is similar to an ordinary negligence claim except that the negligent party must be engaged in a "profession" as defined under Florida law, and the applicable standard of care is that degree of care used by similar professionals in the community under similar circumstances. *Waterford LLC v. Garlick*, No. 4:07-cv-171, 2009 WL 248093, at *2 (N.D. Fla. Feb. 2, 2009) (citing *Moransais v. Heathman*, 744 So. 2d 973, 975–76 (Fla. 1999)).

Summary judgment on the FDIC's professional negligence claim would be improper for the same reasons articulated with respect to the FDIC's other claims. Specifically with respect to the professional negligence claim, the Richards Affidavit is sufficient to create a genuine issue of material fact as to whether Defendants breached a duty owed to BankUnited in their preparation of the Appraisal Report.

Accordingly, it is hereby **ORDERED**:

1. The FDIC's Motion for Partial Summary Judgment (Doc. 42) is **DENIED**, as genuine issues of material fact exist as to Defendants' liability.

**DONE** and **ORDERED** in Orlando, Florida on January 22, 2014.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties